UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

EDWARD J. ZALOGA, D.O.,

        Plaintiff,

v.

PROVIDENT LIFE AND ACCIDENT
INSURANCE COMPANY OF AMERICA AND
UNUM GROUP,

        Defendants.

Case No. 3:09-CV-635

(Judge Kosik)

## MEMORANDUM

Plaintiff, Edward J. Zaloga, D.O. ("Zaloga"), filed on December 24, 2008 a Complaint regarding the denial of disability insurance benefits in the Court of Common Pleas for Lackawanna County. (Doc. 1, Ex. 3.) On April 7, 2009, Defendants Provident Life and Accident Insurance Company ("Provident Life") and Unum Group ("Unum") removed the case to this court on the basis of diversity jurisdiction. (Doc. 1.) We have subject-matter jurisdiction of this case under 28 U.S.C. § 1332(a), as the diversity and amount-in-controversy requirements are met.[1] Because the parties entered into the insurance contract in the Commonwealth of Pennsylvania, we will apply Pennsylvania law to this action.[2]

---

[1] The matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and arises between citizens of different states. Unum is a citizen of both the State of Delaware and the State of Maine because it is a corporation organized and existing under the laws of the State of Delaware, and it has its principal place of business in Portland, Maine. Provident Life is a citizen of the State of Tennessee, because it is a corporation organized and existing under the laws of the State of Tennessee, and it has its principal place of business in Chattanooga, Tennessee. Plaintiff is a citizen of the Commonwealth of Pennsylvania.

[2] Neither party disputes that Pennsylvania law applies to this action. We apply the choice-of-law rules of the state in which the district court sits when federal jurisdiction is based on diversity of citizenship. See St. Paul Fire & Marine Ins. Co. v. Lewis, 935 F.2d 1428, 1431 n.3 (3d Cir.

1

Defendants filed a Motion to Dismiss and Strike and a supporting brief on April 14, 2009. (Doc. 4.) Plaintiff filed a Brief in Opposition on April 29, 2009. (Doc. 5.) After requesting leave of court to file a reply brief (see Doc. 7, ¶ 4), Defendants filed a Reply Brief on November 17, 2009 (Doc. 8.)

Defendants' Motion to Dismiss and Strike (Doc. 4) is presently before us and ripe for adjudication. For the reasons that follow, we will deny the Motion.

## FACTUAL BACKGROUND

A brief recitation of the facts alleged in the Complaint are as follows:

Zaloga, an osteopathic physician and surgeon certified in internal medicine and nephrology, applied to Defendant Provident Life for a private disability insurance policy. As a result of his application, Provident Life issued Policy No. 06-338-6102937 (the "Policy"). The Policy is described as non-cancellable and guaranteed at pre-determined premiums until the later of Zaloga's sixty-fifth birthday or five years. The policy provides for a graduated monthly disability insurance benefit starting with $5,000 a month and increasing annually to $6,400 by July 13, 2004. The benefits are payable after ninety days from the onset of disability, and if the disability was caused by an injury and before Zaloga's sixty-fifth birthday, the benefits continue for life. The policy defines "total disability," "your occupation," and "monthly income." Zaloga's own occupation is that of board certified nephrologist.

On June 17, 2002, Dr. Zaloga was injured in a motor vehicle accident from which he suffered orthopedic and neurological injuries to his neck, left arm, and left hand. By July 13,

---

1991) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). Under Pennsylvania choice-of-law rules, an insurance contract is governed by the law of the state in which the contract was made. McMillan v. State Mut. Life Assurance Co. of Am., 922 F.2d 1073, 1074–75 (3d Cir. 1990); Crawford v. Manhattan Life Ins. Co., 221 A.2d 877, 880 (Pa. Super. Ct. 1966).

2

2004, Zaloga's injuries had progressively worsened to the point that he was determined to be incapacitated and unable to work as a board certified nephrologist. At the time, Zaloga was involved in numerous ventures, including an affiliation with a medical practice, serving as a locum tenens nephrologist, planning to open his own nephrology practice, and forming a corporation to provide medical services to the Lackawanna County Prison. The timing and overlap of these ventures is immaterial at this stage.

On November 29, and December 15, 2005, Zaloga notified Defendants that he would be filing a claim for disability benefits. Defendants conducted an investigation of Zaloga's claim, which included researching Zaloga's own occupation and ventures. After the completion of the investigation, Defendants approved Zaloga's claim, finding as follows: the date of disability was July 13, 2004; Zaloga's own occupation was a nephrologist; and that Zaloga was unable to perform the duties of a nephrologist. Without any reservation of rights, Defendants approved Zaloga's disability benefits retroactive to July 13, 2004 after tolling for the ninety day elimination period. Defendants stated that Zaloga would receive monthly $6,400 from that point forward. Defendants also agreed to waive premiums pursuant to the policy, retroactive to July 13, 2004.

From August 15, 2006 to February 15, 2008, neither Zaloga's medical condition nor his occupational activities changed. During this time, however, Zaloga provided Defendants with monthly supplemental claim forms, which were a prerequisite to receiving his monthly benefit payment. Also during this period, Defendants assigned a new disability benefits specialist to Zaloga's claim. After reviewing Zaloga's claim file, the new benefits specialist drafted a letter alleging that Zaloga was not actively working as a nephrologist on the date of his disability and that Zaloga had acted as Chief Medical Officer of a medical services provider from June 1, 2004

3

forward. The benefits specialist also questioned Zaloga's earnings prior to his disability. Defendants reevaluated Zaloga's claim, specifically considering Zaloga's occupation and whether he had a "dual occupation" prior to the date of his disability. After a review of the internal file but without consulting external sources, Defendants terminated Zaloga's disability benefits. The details of the basis for the termination are immaterial at this point of the litigation.

## DISCUSSION

Defendants argue that we should (1) dismiss Count II of the Complaint for failure to state a claim upon which relief can be granted; (2) dismiss Count IV as a matter of law because Zaloga has not alleged facts sufficient to support such a claim; (3) dismiss and strike Paragraphs 11–17, 37–49, and 81–85 of the Complaint as scandalous, impertinent, irrelevant, and collateral to the issues in the case; and (4) strike from the caption of the Complaint "d/b/a Provident Life and Accident Insurance Company, a Tennessee insurer, The Paul Revere Life Insurance Company, a Massachusetts insurer, And Unum Life Insurance Company, a Maine insurer."

We will discuss each of these motions in turn.

**I.  Rule 12(b)(6) Motion to Dismiss**

Defendants argue that Count II of the Complaint, breach of the covenant of utmost fair dealing, should be dismissed for failure to state a claim upon which relief may be granted because the Pennsylvania bad faith statute, 42 Pa. Cons. Stat. Ann. § 8371, is the only remedy for extra-contractual damages. Defendants also argue that Count IV, violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (the "UTPCPL"), 73 Pa. Stat. Ann. §§ 201-1 to 201-9.3, should be dismissed because Zaloga has not alleged sufficient facts to survive a Rule 12(b)(6) Motion to Dismiss.

4

A.  **Standard of Review**

Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief; the complaint must provide the defendant with fair notice of the claim. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam). The issue in a motion to dismiss is whether the plaintiff should be entitled to offer evidence to support the claim, not whether the plaintiff will ultimately prevail. See Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (the Rule 8 pleading standard "'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."); Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996).

The onus is on the plaintiff to provide a well-drafted complaint that alleges factual support for its claims. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (alteration in original and internal citations omitted). The court need not accept unsupported inferences, Cal. Pub. Employees Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), nor legal conclusions cast as factual allegations, Twombly, 550 U.S. at 556. Legal conclusions without factual support are not entitled to the assumption of truth. See Ashcroft v. Iqbal, --- U.S. ---, ---, 129 S. Ct. 1937, 1949–50 (2009) ("Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not" satisfy the requirements of Rule 8).

Once the court winnows conclusory allegations from those allegations supported by fact, which it accepts as true, the court must engage in a common sense review of the claim to determine whether it is plausible. This is a context-specific task, for which the court should be guided by its judicial experience. The court must dismiss the complaint if it fails to allege enough facts "to state a claim for relief that is plausible on its face." Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. The complaint that shows that the pleader is entitled to relief—or put another way, facially plausible—will survive a Rule 12(b)(6) motion. See Fed. R. Civ. P. 8(a)(2).

**B.     Count II: Breach of the Covenant of Utmost Fair Dealing**

Zaloga's Complaint includes a count for breach of the insurance contract (Count I) and a separate count for breach of the implied covenant of utmost fair dealing (Count II), also known as the covenant of good faith and fair dealing. Defendants argue that "Pennsylvania does not recognize common law bad faith under a covenant of utmost fair dealing" (Doc. 4, Defs. Mot. ¶ 3), thus the only extra-contractual damages allowed for insurance bad faith are under 42 Pa. Cons. Stat. Ann. § 8371.[3] (Doc. 4, Defs. Br. at 11.) Zaloga argues that the Supreme Court of Pennsylvania acknowledged the existence of a common law action in Birth Center v. St. Paul

---

[3] Section 8371 provides for special damages including punitive damages for insurance bad faith:
  In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
  (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
  (2) Award punitive damages against the insurer.
  (3) Assess court costs and attorney fees against the insurer.
42 Pa. Cons. Stat. Ann. § 8371.

Companies, Inc., 787 A.2d 376, 385 (Pa. 2001) ("breach of . . . [the] obligation [to act in good faith] constitutes a breach of the insurance contract for which an action in assumpsit will lie."). (Doc. 5, Pl. Br. at 14.) The difference between the covenant of good faith and fair dealing and an action for bad faith has not been uniformly settled: "Jurisdictions differ as to the meaning of good faith, and legal commentators do not agree even on the basic nature of the implied covenant of good faith, and its relationship to that legally actionable opposite of 'bad faith.'" Couch on Insurance § 198:5 (3d ed. 2004). A cause of action for a breach of the implied covenant of good faith and fair dealing may allow for compensatory damages that go beyond the damages provided by a traditional breach of contract action or a section 8371 claim. See Ash v. Cont'l Ins. Co., 932 A.2d 877, 884 (Pa. 2007); Birth Center, 787 A.2d at 385.

The issue before us is whether the duty of good faith and fair dealing is implied in insurance contracts in Pennsylvania, and if so, whether it is a separate cause of action from breach of contract. Based on our review of insurance law in Pennsylvania, we hold that the breach of the covenant of good faith and fair dealing exists in Pennsylvania as a breach of contract and allows for the award of compensatory damages. See Gray v. Nationwide Mut. Ins. Co., 223 A.2d 8 (Pa. 1966).

1. **The Source of the Implied Covenant of Good Faith and Fair Dealing in Pennsylvania Law**

Insurance contracts in Pennsylvania have an implied covenant of good faith and fair dealing stemming from (1) the Restatement (Second) of Contracts and (2) historical Supreme Court of Pennsylvania precedent.

"Every contract imposes on each party a duty of good faith and fair dealing in its performance and its enforcement." Restatement (Second) of Contracts § 205 (1981). Unlike other states, the Supreme Court of Pennsylvania has not expressly adopted § 205, although it has

7

noted its likely adoption. See Ash, 932 A.2d at 883 n.2 (noting that § 205 has not been formally adopted in Pennsylvania, but stating that the Superior Court and certain members of the Supreme Court have noted its adoption).

When we exercise diversity jurisdiction, we must apply the substantive law as decided by the highest court of the state whose law governs the action. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). When the state's highest court has not addressed the issue presented, we must predict how the state's highest court would resolve the issue. Borman v. Raymark Indus., Inc., 960 F.2d 327, 331 (3d Cir. 1992). Although not dispositive, decisions of state intermediate appellate courts should be accorded significant weight in the absence of an indication that the highest state court would rule otherwise. See Rolick v. Collins Pine Co., 925 F.2d 661, 664 (3d Cir. 1991).

As a court sitting in diversity, we hold that the Supreme Court of Pennsylvania would adopt § 205—and impart a contractual obligation of good faith and fair dealing to all contracts—if it were squarely presented with the issue.[4] In Atlantic Richfield Co. v. Razumic, 390 A.2d 736 n.7a (Pa. 1978), the Supreme Court considered the draft form of § 205 and applied the standard of good faith and fair dealing to a franchise agreement. Further, two individual justices have also evinced their belief that Pennsylvania has adopted § 205. See Bethlehem Steel Corp. v. Litton Indus., Inc., 488 A.2d 581, 600 (Pa. 1985), (Zappala, J., opinion in support of reversal); Frickert v. Deiter Bros. Fuel Co., 347 A.2d 701, 705 (Pa. 1975) (Pomeroy, J., concurring). More recently, in Murphy v. Duquesne University of the Holy Ghost, 777 A.2d 418 (Pa. 2001), the court noted a contracting party's obligation to perform with good faith: "All of the participants

---

[4] Although not binding, other persuasive sources conclude that every contract includes the implied covenant of good faith and fair dealing. See, e.g., Farnsworth on Contracts § 7:17; Williston on Contracts § 600.

8

in the process, including [party], were required to follow the Contract's process to the letter, and fulfill their contractual obligations with good faith." Id. at 598 & n.11.

Aside from the issue of whether § 205 has been adopted, Pennsylvania has historically recognized the covenant of good faith and fair dealing including in the context of insurance law. For example, in Appeal of Elliott, 3 Watts & Serg. 449 (Pa. 1842), the Supreme Court of Pennsylvania applied to a party the duty of "good faith and fair dealing" as a course of conduct in executing a contract.[5] It also applied the duty to insurance contracts: "The utmost fair dealing should characterize the transactions between an insurance company and the insured." Fedas v. Ins. Co. of State of Pa., 151 A. 285, 286 (Pa. 1930), quoted in Dercoli v. Pa. Nat. Mut. Ins. Co., 554 A.2d 906, 909 (Pa. 1989). In Stambler v. Order of Pente, 28 A. 301, 302 (Pa. 1894), the Supreme Court of Pennsylvania applied the principles of good faith and fair dealing to notice and proofs of loss in insurance policies including disability insurance, which was at issue in the case. We note the aforementioned cases to show that the implied duty of good faith and fair dealing was at least historically a component of insurance contracts in Pennsylvania—if not all contracts.

---

[5] Appeal of Elliott involved a dispute over the calculation of the purchase price in a land sales contract. The Supreme Court stated the following with regard to the vendor's duty to the purchasers:
> Unless otherwise informed by the vendor, in whom they would naturally place the utmost confidence, they were warranted in believing that for each and every acre of land they held, they were entitled, by the express terms of the contract, to the sum of $27. And if another construction was intended to be given to the agreement, it was the duty of David to explain it to them fully; for who can say that, if they had been informed in time of the version which is now attempted to be given to the contract, they would have assented to the sale. The vendor cannot complain, if we hold him to a course of conduct in accordance with good faith and fair dealing. It was his duty to have stated to them explicitly, that as his part was the most valuable, he should expect to be paid out of the purchase money, in proportion to its value.

Appeal of Elliott, 3 Watts & Serg. 449, at *3.

## 2. Whether the Implied Covenant of Good Faith and Fair Dealing Is Distinct from a Breach of Contract Claim

Whether express or implied, the covenant of good faith and fair dealing acts as a term of the contract, and that covenant arises from the contract itself. See Ash v. Cont'l Ins. Co., 932 A.2d 877, 884 (Pa. 2007); Birth Center, 787 A.2d at 385; Murphy, 777 A.2d at 434 & n.11; Gray, 223 A.2d at 11 ("We believe that this recent case law, employing contractual terms for the obligation of the insurer to represent in good faith the rights of the insured, indicates that a breach of such an obligation constitutes a breach of the insurance contract for which an action in assumpsit will lie."); Cowden v. Aetna Cas. & Sur. Co., 134 A.2d 223, 229 (Pa. 1957). Because the covenant of good faith and fair dealing arises from the contract and not due to the mere relationship of the parties—as, for example, a fiduciary duty—a breach of the covenant sounds in contract, not tort.[6] See Ash, 932 A.2d at 884. There is, however, no independent cause of action for a breach of the covenant of good faith and fair dealing—arising in contract—in Pennsylvania because such a breach is merely a breach of contract. See Birth Center, 787 A.2d at 385–86; Gray, 223 A.2d at 11. It has been said that a breach of the implied covenant of good faith and fair dealing merges with a breach of contract claim.[7] See Meyer v. Cuna Mut. Group, No. 03-CV-602, 2007 WL 2907276, at * 14–15 (W.D. Pa. Sept. 28) (citing cases).

---

[6] Actions for bad faith may sound in tort, however such actions arise from the breach of a relational obligation—such as a fiduciary obligation. "Pennsylvania courts have stated the key difference between tort actions and contract actions is this: '[t]ort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals.'" Ash, 932 A.2d at 884 (quoting Koken v. Steinberg, 825 A.2d 723, 729 (Pa. Commw. Ct. 2003)). In Pennsylvania, the codified remedy for insurance bad faith, section 8371, sounds in tort. Ash, 932 A.2d at 885 (noting that the legislature imposed a fiduciary duty on insurers by passing section 8371 and holding that section 8371 is a statutorily created tort action).

[7] We question whether the step of merger is necessary if the implied covenant is merely a term of the contract that is then breached.

Defendants rely on D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co., 431 A.2d 966 (Pa. 1981), and Toy v. Metropolitan Life Insurance Co., 928 A.2d 186 (Pa. 2007), for their assertion that a common law action for bad faith does not exist in Pennsylvania law or does not exist for first party claims. Defendants miss the difference between actions arising out of contract versus tort law.

The Supreme Court of Pennsylvania specifically held in D'Ambrosio that a common law action for bad faith sounding in tort does not exist in Pennsylvania law,[8] however the court stated that the assumpsit claim was not before the court and that "[t]he possibility cannot be ruled out that emotional distress damages may be recoverable on a contract where, for example, the breach is of such a kind that serious emotional disturbance was a particularly likely result." Id. at 970. Justice Nix concurred with the result and added that the plaintiff could have sought relief under a breach of contract theory. See id. at 973–94 (Nix, J., concurring). As we noted previously, to the extent that Defendants argue that the implied covenant of good faith and fair dealing gives rise to no independent action aside from breach of contract, they are correct.

Defendants also rely on the difference between first and third party claims. The difference between first and third party claims does not matter to the implied covenant of good faith and fair dealing. First, the implied covenant is brought on a contractual theory of recovery, so the relationship of the parties does not matter. Although the Supreme Court of Pennsylvania distinguished these types of claims in D'Ambrosio, that case involved a bad faith claim arising

---

[8] As the Supreme Court of Pennsylvania explained in Toy, the holding in D'Ambrosio was in response to a national movement to extend the tortious remedy of bad faith, previously only applied in Pennsylvania to third party claims, see Cowden, 134 A.2d at 229, to first party claims. See Toy, 928 A.2d at 198–99 (discussing that many state supreme courts adopted the holding in Gruenberg v. Aetna Insurance Co., 510 P.2d 1032 (Cal. 1973), and noting that the Supreme Court of Pennsylvania had rejected Gruenberg in D'Ambrosio). In D'Ambrosio, the court stated that first party insureds have no bad faith claim sounding in tort.

11

out of tort law. Further, we note that the Pennsylvania legislature passed section 8371 in response to the holding in D'Ambrosio, therefore imposing a fiduciary duty on all insurers. See Ash, 932 A.2d at 885. Finally, we note that Toy v. Metropolitan Life Insurance Co., 928 A.2d 186 (Pa. 2007), repeatedly cited by Defendants in their Reply Brief, states that at the time section 8371 was adopted, "the term 'bad faith' concerned the duty of good faith and fair dealing in the parties' contract and the manner by which an insurer discharged its obligations of defense and indemnification in the third-party claim context or its obligation to pay for a loss in the first party claim context." Id. at 199 (emphasis added).

The import of this discussion is that an action for breach of an implied covenant of good faith and fair dealing does lie as a breach of contract claim, which may allow a plaintiff to recover compensatory damages, whereas section 8371 only permits special damages as defined in the text of the statute. See Birth Center, 787 A.2d at 386 & n.12 (noting Justice Cappy's concurrence in Johnson v. Beane, 664 A.2d 96, 101–02 (Pa. 1995)). Zaloga has alleged his right to compensatory damages in the Complaint and further factual development of this case may prove his right to such damages. Therefore, we will deny the Motion to Dismiss as to Count II of the Complaint.

C. Count IV: Violation of Unfair Trade Practices and Consumer Protection Law

The UTPCPL provides, in pertinent part, that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined by . . . this act are hereby declared unlawful. 73 Pa. Stat. Ann. § 201-3. "[T]he UTPCPL is designed to protect the public from fraud and deceptive business practices." Gardner v. State Farm Fire & Cas. Co., 544 F.3d 553, 564 (3d Cir. 2008). It provides a private cause of action for "[a]ny person who purchases . . . goods or services primarily for personal, family or household purposes and thereby

suffers any ascertainable loss of money or property" due to the seller's unfair or deceptive acts or practices. 73 Pa. Stat. Ann. § 201-9.2(a).

"In Pennsylvania, only malfeasance, the improper performance of a contractual obligation, raises a cause of action under the [UTPCPL], and an insurer's mere refusal to pay a claim which constitutes nonfeasance, the failure to perform a contractual duty, is not actionable." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 307 (3d Cir. 1995) (citing Gordon v. Pa. Blue Shield, 548 A.2d 600, 604 (Pa. Super. Ct. 1988)); see also Gardner, 544 F.3d at 564–65.

In the instant case, the insurer first granted Zaloga's disability claim, but later reversed course, which Defendants allege occurred after obtaining additional information related to Zaloga's claim, and terminated the payment of benefits under the policy. Zaloga argues that Defendants did not obtain additional information but rather reevaluated existing information and "applied a definition of total disability that materially differs from the definition of total disability in [Defendants] own Policy in order to create a pretext to terminate Plaintiff's benefits." (Doc. 5 at 14.) Further, Zaloga alleges that applying a materially different definition of total disability than that which is defined in the policy violates Defendants own investigative procedures and therefore constitutes malfeasance.

It is true that Zaloga alleges that Defendants failed to pay benefits as owed by a term of the insurance contract and that the failure to perform a contractual term generally is nonfeasance, however the facts alleged by Zaloga go beyond black or white performance and inject the question of the propriety of Defendants' behavior in performing their duty. As alleged, it is plausible to view these facts in the light most favorable to Zaloga and conclude that Defendants misperformed their obligation to Defendant rather than failed to perform it. Therefore, we will deny the Motion to Dismiss as to Count IV of the Complaint.

## II. Rule 12(f) Motion to Strike Allegations in Plaintiff's Complaint

### A. Standard of Review

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A decision to grant or deny a motion to strike a pleading is vested in the trial court's discretion. See Snare & Triest v. Friedman, 169 F. 1, 6 (3d Cir. 1909); BJC Heath System v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." McInerney v. Moyer Lumber & Hardware, Inc., 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002).

"Immaterial matter is that which has no essential or important relationship to the claim for relief. Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question. Scandalous matter has been defined as that which improperly casts a derogatory light on someone, most typically on a party to the action. Scandalous pleading must 'reflect cruelly' upon the defendant's moral character, use 'repulsive language' or 'detract from the dignity of the court." Donnelly v. Commonwealth Fin. Sys., No. 07-CV-1881, 2008 WL 762085, at *4 (M.D. Pa. Mar. 20) (internal citations omitted).

Motions to strike are decided on the pleadings alone. Hanover Ins. Co. v. Ryan, 619 F. Supp. 2d 127, 132 (E.D. Pa. 2007). Because a motion to strike is not favored, a court will generally not grant such a motion unless the material to be stricken bears no possible relationship to the controversy and may cause prejudice to one of the parties. See Hanover Ins. Co., 619, F. Supp. 2d at 133; Miller v. Group Voyagers, Inc., 912 F. Supp. 164, 168 (E.D. Pa. 1996). In deciding the motion, a court should also consider the liberal pleading standards of Rule 8 and the lack of a developed factual record at this early stage of litigation. See Hanover Ins. Co., 619 F.

14

Supp. 2d at 133; United States v. Consolidation Coal Co., No. 89-CV-2124, 1991 WL 333694, at *1 (W.D. Pa. Jul. 5) (citing Kelly v. Thomas Solvent Co., 714 F. Supp. 1439, 1442 (W.D. Mich. 1989)).

**B.     Application**

Defendants request that we should dismiss and strike paragraphs 11 through 17, 37 through 49, and 81 through 85 of Plaintiff's Complaint. Defendants contend that such allegations bear no connection to a bad faith or breach of contract claim under Pennsylvania law. (Doc. 4, Defs. Br. at 14–15.) We disagree.

The gist of the paragraphs of which Defendants complain include allegations regarding Defendants' claims handling, risk management practices, background information about Defendants and the disability insurance industry, and past cases in which one or both of Defendants was a party. Although some of the allegations might be ultimately irrelevant to the disposition of this case, Plaintiff makes clear in the Complaint that such allegations are included to show a common design and scheme on the part of Defendants. In Paragraph 18, Plaintiff alleges, "[a]t all relevant times herein, defendants acted jointly, in concert and in bad faith, for their mutual economic benefit and as a common design, to deny Dr. Zaloga his rights under his insurance policy." This allegation connects the background information paragraphs to Dr. Zaloga's claim. Furthermore, Plaintiff's citation of past court cases are provided to show that Defendants may have been on notice regarding criticized claims handling practices. The effect that the allegations may have on the disposition of this litigation is unknown, but to say that the allegations are irrelevant, immaterial, impertinent, or scandalous is a stretch.

In Pennsylvania, to succeed on a bad faith claim, a plaintiff-insured must prove (1) that the insurer did not have a reasonable basis for denying benefits under the policy, and (2) that the

15

insurer knew of or recklessly disregarded its lack of a reasonable basis in denying the claim. Northwestern Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005); Klinger v. State Farm Mut. Auto. Ins. Co., 115 F.3d 230, 233 (3d Cir. 1997) (recognizing that Terletsky established the test for section 8371 causes of action); Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994). It seems to the court that all of the allegations at issue either go to the reasonableness of Defendants' conduct or to Defendants' state of mind in knowing or recklessly disregarding a reasonable basis. The allegations do not "reflect cruelly" on Defendants and cannot be said to be scandalous. Therefore, the Motion to Dismiss/Strike the allegations in Plaintiff's Complaint will be denied.

**III.    Motion to Strike Paul Revere and Unum Life from Caption of the Complaint**

Defendants argue that Plaintiff fails to allege a cause of action against "Paul Revere Life Insurance Company" and "Unum Life Insurance Company," and therefore these entities should be dismissed from the caption of the Complaint. (Doc. 4, Defs. Br. at 25.) Plaintiff argues that "a portion of Unum Group's conduct relevant to Dr. Zaloga's § 8371 claim and resulting punitive damages claim directly involves Unum Group, allowing the description of Unum Group's component parts to remain within the caption is reasonable" and that "Defendants are unable to demonstrate that keeping Paul Revere and Unum Life as part of the caption has no possible relation to the controversy and may prejudice the Defendants." (Doc. 5, Pl. Br. at 21–22.)

We agree with the Plaintiff. We note that only "Provident Life and Accident Insurance Company of America" and "Unum Group" are Defendants in this litigation. "The Paul Revere Life Insurance Company" and "Unum Life Insurance Company" are listed as a parenthetical "doing business as" description of Unum Group in the Complaint's caption. We see no prejudice to Defendants in keeping the descriptive parenthetical as part of the official caption of the case.

Should this issue arise again (perhaps if prejudice arises), we will reconsider the issue on motion of Defendants.

To the court's knowledge, Plaintiff does not allege a "joint venture" or "alter ego" scheme with these descriptive entities; however we note that other courts to have considered this issue (ultimately whether parent, subsidiary, and/or related entities are proper parties in a lawsuit when not a party to the insurance contract) have addressed this issue at summary judgment when it is more appropriate. See, e.g., Strong v. UnumProvident Corp., 393 F. Supp. 2d 1012, 1026–27 (D. Idaho 2005) (evaluating whether Unum and UnumProvident are joint ventures of Provident at the summary judgment stage); Univ. Medic. Assocs. of Med. Univ. of S.C. v. UnumProvident Corp., 335 F. Supp. 2d 702, 707 (D.S.C. 2004) (discussing whether plaintiff can pierce the corporate veil through to UnumProvident and Unum Life at the summary judgment stage); Wady v. Provident Life & Accident Ins. Co. of Am., 216 F. Supp. 2d 1060, 1067–70 (C.D. Cal. 2002) (discussing alter ego status of UnumProvident at summary judgment stage).

The motion to strike will be denied without prejudice to Defendants.

## CONCLUSION

Defendants' Motion to Dismiss and/or Strike will be denied for the reasons stated in this Memorandum. Despite Defendants' argument to the contrary, under Pennsylvania insurance law, Zaloga may bring a breach of the implied covenant of good faith and fair dealing claim arising in contract. Further, Defendants have failed to show that Zaloga's UTPCPL claim is not facially plausible. Finally, Defendants have failed to show prejudice in the naming of "Paul Revere Life Insurance Company" and "Unum Life Insurance Company" as d/b/a entities in the caption of the Complaint.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

EDWARD J. ZALOGA, D.O.,

    Plaintiff,

v.

PROVIDENT LIFE AND ACCIDENT
INSURANCE COMPANY OF AMERICA AND
UNUM GROUP,

    Defendants.

Case No. 3:09-CV-635

(Judge Kosik)

## ORDER

AND NOW, this _24_ day of November, 2009, IT IS HEREBY ORDERED THAT:

1. Defendants' Motion to Dismiss and/or Strike (Doc. 4) is **DENIED** for the reasons stated in the attached Memorandum;

2. Defendants shall file an Answer to the Complaint within twenty (20) days of the date of this Order.

                              Edwin M. Kosik
                              United States District Judge